IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

YASMIN HUGHES                                                                        PETITIONER

v.                                                                              No. 1:09CV284-A-S

CHRISTOPHER EPPS, ET AL.                                                          RESPONDENTS

**MEMORANDUM OPINION**

This matter comes before the court on the petition of Yasmin Hughes for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and Hughes has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be granted.

**Facts and Procedural Posture**

On the evening of May 2, 2006 in Louisville, Mississippi, Yasmin Hughes, who was seventeen years old at the time, accompanied Adrion Webster on a drive around the Louisville area. Webster was driving. Webster pulled briefly into a driveway of a house with bright lights and barking dogs, then backed out and drove away. A short time later, he parked 150 to 200 yards away from the home of Jack "Bubba" Warner and his wife, Pat Warner and knocked on their door. *Hughes v. State,* 983 So.2d 270, 274 (Miss. 2008). Webster told Jack Warner that his truck had run out of gas and asked to use the Warners' phone. *Id.* Hughes stood silently behind Webster and did not say anything throughout the encounter. *Id.* After Webster finished the call, Jack Warner offered Webster some gas from his carport. Webster refused, stating "they are bringing us some gas." *Id.* After the phone call, Hughes, "who was standing in the back, pulled a hood over his head," and started walking away. *Id.* at 274, 277. In a written statement given soon after the shooting occurred, Mr. Warner said that Hughes started walking away before the

shooting began. *Id.* at 277.[1]  When Jack Warner turned to go back in the house, Webster shot him three times; he then shot Pat Warner twice. *Id.* at 274.  None of the wounds was fatal. Hughes then ran back to the truck.  When Webster returned to the vehicle, he asked Hughes, "Why did you run?  That was our lick."  Webster then drove Hughes home. *Id.* at 275.  Nothing was stolen from the Warners.

Several days later, Hughes gave a signed statement that he and Webster had been riding around in Webster's car talking about "ways to make money," ranging from barber school to robbery. *Id.* at 275.  Then, "[Webster] asked to use my phone and I told him I didn['t] have it. [Webster] pulled over and told me to walk up to someone['s] house with him so he could use the phone.  A man answer[ed] the door and let [Webster] use the phone.  When [Webster] gave the phone back I turned away and started walking toward the truck when I heard gun shots." *Id.*

Hughes did not participate in the shootings or try to take anything from the Warners. Officer Greg Clark testified that there was no evidence that Hughes knew about Webster's gun. *Id.* at 276.

On September 26, 2006, Hughes was indicted on one count of armed robbery and two counts of aggravated assault – one with respect to Jack Warner and one with respect to Pat Warner. *Id.* at 275.  Webster was indicted, but pled guilty to two counts of aggravated assault. The State dropped the armed robbery charge. *Id.* at 275 n.7.  At trial, Hughes was convicted of all three counts on November 27, 2006. *Id.* at 274.  Though Webster had pled guilty, the State did not call him as a witness at Hughes' trial.  Hughes was sentenced to thirty years for the

---

[1] However, in his testimony much later at trial, Mr. Warner said that Hughes turned away at about the same time as the shooting began.  This distinction does not affect the outcome of the current petition.

armed robbery and two twenty-year sentences for the aggravated assaults, all to run concurrently. *Id.* at 275.

Hughes appealed his conviction to the Mississippi Supreme Court, contesting the sufficiency of the evidence to show that he had the statutorily required intent to commit aggravated assault or armed robbery. The Court affirmed the convictions, concluding that Hughes aided and abetted the crimes of armed robbery and aggravated assault. *Id.* at 274, 277.

Hughes filed a Motion for Rehearing, which the Mississippi Supreme Court denied. A Petition for Writ of Certiorari before the United States Supreme Court was also denied. Hughes then filed the present petition for a writ of *habeas corpus.*

## Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered Ground One on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas* review by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to

questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Ground One of the petitioner's claim.

Under § 2254(d)(2) this ground also merits review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has met this burden; as such, the court will consider this claim under the exception

found in subsection (d)(2).

## Sufficiency of the Evidence

In order to obtain *habeas corpus* relief on a claim that the evidence presented was insufficient to sustain his conviction, Hughes must show that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), *Harris v. Blackburn*, 646 F.2d 904 (5th Cir. 1981). The court must apply the elements of state criminal law in determining whether the evidence presented was sufficient to support the conviction. *Turner v. McKaskle*, 721 F.2d 999 (5th Cir. 1983). The *Jackson* test "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Santellan v. Cockrell*, 271 F.3d 190 (5th Cir. 2001), quoting *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993). There is a palpable difference between evidence which gives rise only to "reasonable speculation" and that establishing proof beyond reasonable doubt. *Newman v. Metrish*, 543 F.3d 793 (6th Cir. 2008). Proof beyond reasonable doubt will sustain a conviction; proof showing only reasonable suspicion will not. *Id.* To make this decision, the court must determine whether the jury was rational in concluding (after reviewing the proof presented) that there was no reasonable doubt as to the defendant's guilt. "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must *necessarily* entertain a reasonable doubt." *Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985)(emphasis added). That is the standard for judging the reasonableness of the jury's decision based upon the

evidence presented at trial. To decide this issue, the court must determine whether the jury's interpretation of the evidence presented is reasonable.

## Insufficient Evidence to Support Conviction for Aiding and Abetting Armed Robbery

In Mississippi, armed robbery (as applied to this case) is defined as: "Every person who shall feloniously . . . attempt to take from the person or from the presence the personal property of another and against his will by violence to his person . . . by the exhibition of a deadly weapon . . . shall be guilty of robbery . . . ." MISS. CODE ANN. § 97-3-79. As Hughes did not even speak with the Warners, move aggressively towards them, fire on them (and considering that he was unarmed), he could not be charged directly with armed robbery. Instead, he was charged with aiding and abetting Webster in the crime of armed robbery. Mississippi has adopted as its law the Fifth Circuit Pattern Jury Instruction on aiding and abetting, which reads:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
>
> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
>
> Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
>
> Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

> In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

*Brassfield v. State*, 905 So.2d 754, 757-758 (Miss. App. 2004). Thus, as applied to this case, the State had to prove that Hughes: (1) voluntarily, (2) participated, (3) in the commission of the crime (armed robbery), (4) with the intent to violate the law.

To secure a conviction for aiding and abetting armed robbery, the State must prove each element of the offenses beyond reasonable doubt. There is a complete absence of proof regarding more than one element of these crimes. As to knowledge of simple robbery, the talk earlier in the day of potentially robbing someone may establish Hughes' knowledge that Webster might do such a thing.

However, there is not one iota of proof in the record that Hughes knew Webster was armed before Hughes heard shots ring out as he turned away to return to the truck. A prosecution witness, Officer Greg Clark, even conceded that there was no evidence that Hughes knew that Webster had a gun. Put simply, in order to voluntarily join Webster in the commission of armed robbery, Hughes would have to have known that Webster was armed. There is no proof at all that Hughes had such knowledge. As such, there was insufficient evidence – in this case *no* evidence – to prove that Hughes deliberately associated himself with the crime of armed robbery – an element necessary to sustain Hughes' conviction for aiding and abetting armed robbery. In the absence of *any* proof that Hughes knew Webster was armed, certainly no rational jury could have found such proof beyond reasonable doubt. Hughes is entitled to *habeas corpus* relief on his aiding and abetting armed robbery conviction for this reason alone.

In addition, Hughes took no *action* in support of the crime of armed robbery. He rode

around with Webster (who was driving in a car that Hughes did not own) earlier in the evening, followed Webster to the Warners' house, stood silent behind him while he spoke with them, turned to leave when the conversation was over, then ran when he heard the shots. For the State to convict him for aiding and abetting armed robbery, Hughes must have participated in some way in the crime, and he did not. The Mississippi Supreme Court recited these facts and concluded that Hughes participated in the armed robbery; however, none of these acts constitutes participation in the crime. No proof shows that Hughes encouraged Webster, and Hughes certainly took no action himself that would meet any element of armed robbery.

Mere presence at the scene of a crime – even with knowledge that a crime will be committed – is not enough to sustain a conviction for aiding and abetting armed robbery – or any other crime.

> A strikingly clear and accurate statement of the rule is found in that very valuable work, McClain on Criminal Law, c. 15, § 194, as follows: "Some degree of participation in the criminal act must be shown in order to establish any criminal liability. Proof that one has stood by at the commission of a crime without taking any steps to prevent it does not alone indicate such participation or combination in the wrong done as to show criminal liability, although he approves of the act. Even the fact of previous knowledge that a felony was intended will not render one who has concealed such knowledge and is present at the commission of the offense a party thereto." See, also, 9 Am. & Eng. Enc. of Law, p. 575; 2 Thompson, Trials, § 2216.

*Harper v. State*, 83 Miss. 402, 35 So. 572 (Miss. 1904).

Other Mississippi cases have required more than merely accompanying the principal to the crime scene to establish participation in the crime. See *Williams v. State*, 94 So.2d 324 (Miss. App. 2011) (aiding and abetting found when evidence showed that defendant was part of a love triangle, suspected trouble, stood by knowing the principal was armed, did not stop the encounter or seek help, traveled to another state with the principal with pre-packed bags, and that

-8-

another witness stated that defendant knew of the plan to kill victim, who was also part of a love triangle); *Stevenson v. State*, 738 So.2d 1248 (Miss. App. 1999) (aiding and abetting found when defendants arrived together in the same vehicle, both left the vehicle at the same time, both were armed with deadly weapons, defendant stood beside principal and did not run as three shotgun blasts were fired into a crowd); *Bland v. State*, 771 So.2d 961 (Miss. App. 2000) (defendant and principal planned murder and vied for the honor of pulling the trigger, defendant and victim engaged in a heated argument prior to the killing, and two people shot the victim from the vehicle in which defendant was traveling). Each of these cases required the defendant to do more than accompany the principal to the scene, say nothing, then flee when shots were fired. Indeed, the court can find *no* Mississippi case holding that merely accompanying a principal to the crime scene, standing silent, then leaving rises to the level of aiding and abetting, even with knowledge that a crime may be committed.

On the other hand, when the proof shows only that the defendant was present at the scene and did nothing to encourage the principal or participate in the crime, he cannot be convicted for aiding and abetting the principal. *Bruce v. State*, 138 Miss. 402, 35 So. 572 (1904). In the absence of a conspiracy to commit the crime charged (in this case armed robbery), mere presence at the scene and knowledge of the crime are not sufficient to sustain a conviction for aiding and abetting. *Griffin v. State*, 293 So.2d 810, (Miss. 1974). In the present case, Hughes could not have conspired to commit an armed robbery without knowing that Webster was armed, and there is no proof in the record he had such knowledge.

In sum, the trier of fact could not have rationally concluded beyond reasonable doubt that Hughes aided and abetted Webster in the crime of armed robbery, and *habeas corpus* relief will

be granted as to that conviction.

## Insufficient Evidence to Support Conviction for
## Aiding and Abetting Aggravated Assault

The same principles discussed above apply to Hughes' conviction for aggravated assault. In addition, though proof exists in the record sufficient to prove that Hughes knew Webster might attempt a *simple* robbery (not an armed robbery), there is no proof whatsoever that he knew Webster might assault the Warners with a gun. There is no proof that Hughes even knew Webster had a gun.

Section 97-3-7(2) of the Mississippi Code sets forth the elements of aggravated assault. It reads, in pertinent part:

> A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

MISS. CODE ANN. § 97-3-7-(2).

Aggravated assault is not a lesser included offense of armed robbery, as each requires an element to be proved that is not an element of the other. *Thomas v. State*, 930 So.2d 1264 (Miss. App. 2005). Thus, even if there were proof that Hughes agreed with Webster to commit armed robbery, the court could not also conclude that Hughes agreed to commit aggravated assault. No such proof is in the record. Hughes' said in his written statement that he and Webster discussed, among other things, that robbing someone could be a way to get some money. His statement did not mention a discussion of assaulting anyone. As set forth above, there is *no* evidence of record that Hughes knew Webster had a gun, *no* evidence that Hughes knew Webster planned to attack

the Warners, and, again, *no* evidence that Hughes performed acts with the intent to commit the crime of aggravated assault. Neither is there evidence that he voluntarily participated in the commission of the crime of aggravated assault. To the contrary, Hughes turned away to leave, then as soon as the assault began, he fled the scene. Webster's later question, "Why did you run? That was our lick," shows that even Webster believed Hughes did not participate in the attacks.

Thus, as to several elements necessary to prove the two counts of aiding and abetting Webster in aggravated assault, there was simply *no* evidence to sustain Hughes' conviction. First, he performed *no* "acts with the intent to commit" an aggravated assault. *Brassfield v. State*, 905 So.2d 754, 757-758 (Miss. App. 2004). The State introduced *no* proof that Hughes "deliberately associate[d] himself in some way with the crime [of aggravated assault] and participate[d] in it with the intent to bring about the crime." *Id.* There is *no* proof that he even knew that Webster planned to attack the Warners. There is *no* proof that Hughes "voluntarily participated in [the] commission [of aggravated assault] with the intent to violate the law." *Id.* To the contrary, once he heard the shots ring out, the fled the scene. These are all necessary elements of the crime of aiding and abetting an aggravated assault, and the State provided absolutely no proof to support any of them.

Webster discussed with Hughes robbing, hustling, and barbering as various means to make money. Neither of them mentioned a weapon, and there is no proof that Hughes knew Webster had a gun. Sometime later that day, Hughes accompanied Webster to the Warners' home, where Webster tried to trick the Warners then shot at them, injuring them both. The earlier conversation is sufficient to establish that Hughes knew Webster might commit a simple

-11-

robbery.  But his decision not to act (not even to speak), then walk away, then flee when shots rang out does *not* establish beyond reasonable doubt that merely walking to the Warners' house constitutes an act in support of armed robbery.  In this case, "the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged[; as such,] a reasonable jury must *necessarily* entertain a reasonable doubt."  *Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985)(emphasis added).

Taken in the light most favorable to the prosecution, Hughes' conversation about robbing, his walk from the truck to the Warners' home, his silence the entire time, his turning to walk away, and his flight once a shot rang out, point far more to his innocence of the crime of aiding and abetting aggravated assault, than to his guilt.  These actions show, at most, his knowledge that Webster planned a simple robbery.  He, at all times, remained an observer; he did not participate in the robbery.  It was not rational for the jury to find beyond reasonable doubt that Hughes aided and abetted Webster in these crimes.

**Conclusion**

In order to convict a defendant of a crime, the State must prove each element of the crime charged beyond reasonable doubt.  The standard on *habeas corpus* review for a claim that the evidence presented was insufficient to support a conviction is whether, after viewing evidence in light most favorable to prosecution, any rational trier of fact would have found the essential element of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), *Harris v. Blackburn*, 646 F.2d 904 (5th Cir. 1981).  The court must apply the elements of state criminal law in determining whether the evidence presented was sufficient to

support the conviction. *Turner v. McKaskle*, 721 F.2d 999 (5th Cir. 1983).

For several elements of the crimes charged – aiding and abetting armed robbery and aiding and abetting aggravated assault – the State presented no proof at all to support them. In the absence of any evidence of these essential elements, certainly no reasonable trier of fact could have found that the State provided proof of them beyond reasonable doubt. For this reason, the adjudication of these claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2). As such, the evidence in the record regarding the convictions of Yasmin Hughes for aiding and abetting armed robbery and two counts of aiding and abetting aggravated assault is insufficient to support the convictions, and his petition for a writ of *habeas corpus* is **GRANTED**. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 27th day of March, 2013.

                                                /s/ Sharion Aycock
                                                **U.S. DISTRICT JUDGE**